UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-cv-510

MICKY SIMONS,

    Plaintiff,

v.

SHENZHEN GEEKVAPE TECHNOLOGY CO., LTD., VPRO TECH, LLC d/b/a GEEKVAPE USA,

    Defendants.

COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, Micky Simons, by and through his counsel of record, for his Complaint against Defendants, SHENZHEN GEEKVAPE TECHNOLOGY CO., LTD., and VPRO TECH, LLC d/b/a GEEKVAPE USA alleges as follows:

### I. PARTIES

1. Plaintiff Micky Simons is a resident of Richlands, Onslow County, North Carolina.

2. Defendant Shenzhen Geekvape Technology Co., Ltd. ("Geekvape") is a corporation organized under the laws of the People's Republic of China. On information and belief, Geekvape's principal place of business is located at 3012 Xixiang Road, 7th Floor, West Block, Lao Bing Building, Shenzhen, GuangDong Shen 518000, People's Republic of China. Geekvape has availed itself of the laws and protections provided by the State of North Carolina, by designing, manufacturing and/or selling products in the State of North Carolina,

1

including the Geek Vape Aegis 200W device such as the one at issue in this case.

3. The United States of America and People's Republic of China are parties to the Hague Convention on the Service of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, 20 U.S.T. 361; 658 U.N.T.S. 163.

4. At all times relevant to this Complaint, Defendant VPRO Tech, LLC d/b/a Geekvape USA ("Geekvape USA") was a limited liability corporation organized and existing pursuant to the law of the State of Michigan.[1]

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the Plaintiff's state law claims by operation of this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1322.

6. This Court has personal jurisdiction over the Geekvape Defendants pursuant to N.C. Gen. Stat. § 1-75.4(1)(d), the North Carolina long-arm statute, in that at all times relevant to these proceedings, Defendants were engaged in substantial activity within the State of North Carolina. Moreover, the exercise of personal jurisdiction by this Court over Geekvape is authorized by Federal Rule of Civil Procedure 4(k)(1)(A) in that Geekvape would be subject to the jurisdiction of a court of general jurisdiction in the State of North Carolina. Further, this Court has personal jurisdiction over Defendants in that Defendants have at all relevant times maintained continuous and systematic contacts with the State of North Carolina, including the distribution and sale of vaping devices such as the device at issue in this matter, such that the exercise of jurisdiction by this Court would not offend traditional notions of fair play and substantial justice, consistent with the United States Constitution.

---

[1] According to public records, VPRO Tech, LLC d/b/a Geekvape USA dissolved effective September 24, 2024.

7. The Geekvape Defendants intentionally market to the State of North Carolina and Defendants' products can be purchased directly through www.geekvape.com and shipped to North Carolina. On information and belief, this website is owned, maintained, operated and/or controlled by Defendants. Geekvape products are ubiquitous in the retail vaping industry in North Carolina. Moreover, Defendant Geekvape obtained a trademark to the term Geekvape from the United States Trademark & Patent Office for the purposes of marketing the device sold to Plaintiff in North Carolina among other states.

8. Venue is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391 because Plaintiff resides in the Eastern District of North Carolina and this Court has personal jurisdiction over Geekvape and Geekvape USA within the Eastern District of North Carolina as set forth above.

### III. FACTUAL ALLEGATIONS

9. Vaping devices are battery-powered devices that deliver heated flavored vapor, similar to smoke, and usually contain nicotine, to the user via inhalation. Vaping devices are also known as electronic cigarettes, e-cigs, electronic nicotine delivery systems, and vape pens.

10. Each vaping device has an electronic heating element called an atomizer or cartomizer, which vaporizes a liquid solution ("juice") stored in a cartridge. The heating element is powered by a battery.

11. At all times relevant to this Complaint, Defendants were engaged in the design, manufacture, and sale of vaping devices which were sold online and at vape shops around the country, including shops in North Carolina. Defendants' vape devices are sold under the brand name Geekvape and include a model known as the Geekvape Aegis 200W.

12. Prior to April 5, 2023, Plaintiff purchased a Geekvape Aegis 200W vaping device at a vape shop in North Carolina ("subject device").

13. As a power source, the subject device used removeable and rechargeable 18650 cylindrical lithium-ion batteries ("CLC"). The 18650 nomenclature refers to the size of the battery – 18mm in diameter and 65mm in length.

14. This means that, as intended by the Defendants, Plaintiff purchased an individual rechargeable CLC for the sole purposes of powering his vape device. Because of the amount of power required to vaporize vape liquid, even powerful lithium-ion batteries do not last long in vape devices. Consequently, vape users will often carry a spare battery on their person to use when their first battery dies. The discharged battery is then charged using an external charger. Defendants know this.

15. Plaintiff followed the practice outlined above.

16. Lithium-ion batteries generate electricity in fundamentally the same way all batteries used in consumer electronics do and have the same basic components:

> Two *electrodes* referred to as the *cathode* and *anode*;
>
> An electronic insulating film/layer between the electrodes, called a *separator*;
>
> A substance called the *electrolyte*, which contains positive and negative ions in solution, typically a salt or salts dissolved in a liquid;
>
> *Current collectors*, which are metal sheets that are in contact with the individual electrodes;
>
> A *container* which holds all of the above materials; and
>
> Two *terminals* (positive and negative), which are external contacts on the container that make connections with the internal electrode current collectors.

17. When a device—for example, a light bulb—is connected to the two terminals of a battery, a complete electrical circuit is formed between the two electrodes. This causes electrons

4

to flow between the electrodes. Because the separator material is electronically insulating, it prevents electrons from flowing directly between the cathode and the anode internally in the battery, forcing the electrons to travel via the external circuit, where they pass through the load of the connected device, providing power to the device in the process.

18. In CLCs, the cathode and anode materials are layered in sheets, with the separator—a very thin sheet of plastic—layered between them. The sheets of the three materials are then rolled into a cylindrical shape known as a "jelly roll," illustrated in Figure 1. During manufacturing, the jelly roll is inserted into the metal can container and the liquid electrolyte is then also injected into the container.



*Figure 1. Cross section of a typical 18650 battery cell, showing "jelly roll" configuration.*

19. Because a CLC consists of numerous layers cathodes and anodes, the energy density is extremely high. Thus, as discussed below, when a CLC malfunctions, the amount of energy released can be catastrophic.

20. In any lithium-ion battery, if electrons flow directly between the anode and cathode, without an intervening "load" (powered device), the result is called a "short circuit."

5

21.     A short circuit can be external or internal. In an external short circuit, a low-resistance conductive material (such as a wire) creates a direct connection between the two terminals of a battery, allowing the electrons to flow directly from the anode to the cathode via the conductive material, without the resistance of an intervening load. An internal short circuit, on the other hand, is caused when the separator fails to prevent electrons from flowing directly between the anode and the cathode.

22.     Without the intervening load of a connected device to consume the energy created by the traveling electrons, a short circuit (whether internal or external) results in an excessive amount of current flowing directly between the anode and cathode. This "unlimited" current flow can result in damage to the battery, overheating, fire, and explosion.

23.     A short circuit can be especially dangerous in a lithium-ion battery. The electrolyte solvent used in lithium-ion batteries is a flammable organic liquid. The heat caused by a short circuit (whether internal or external), especially in combination with a flammable liquid, can create a dangerous situation in which the battery experiences rapid temperature increases that then causes a violent explosion. The danger is particularly acute with CLCs because of their energy density.

24.     Ordinary consumers are aware that batteries have "positive" and "negative" ends. However, most consumers are not aware that in an 18650 CLC the entire battery "can" is the "negative" terminal. This battery can is covered with a thin non-conductive wrapper. When used as an individual removeable battery, this wrapper easily develops minor tears with ordinary use. When this occurs, even a small piece of conductive material can connect the negative and positive terminals of a lithium-ion battery resulting in an external short circuit and a catastrophic explosion.

25. As a result, CLCs are intended only for use in battery packs with hard plastic protective cases and protective circuitry. Battery packs are incorporated into consumer products such as laptops and power tools, and the individual CLCs themselves are not removed for charging.

26. Every single major lithium-ion battery manufacturer, such as LG Chem, Panasonic and Samsung SDI, warn against consumers handling CLCs, including the 18650-type CLC used in the subject device, due to the risk of fire and explosion. All major lithium-ion battery manufacturers prohibit the sale or use of CLCs for use in vaping devices unless the batteries are encased in a protective battery pack. CLCs are not designed or intended to be used as removable batteries in vaping devices. Defendants knew this yet specifically designed its device to use removable CLCs.

27. On April 5, 2023, Plaintiff was at his mother's home in Buckhannon, Upshur County, West Virginia.

28. Plaintiff had a Lithicore Tech 18650 lithium-ion battery in his right front pants pocket for use in the subject device. Lithicore does not manufacture batteries but, on information and belief, diverts batteries from the normal supply chain of unknown battery manufactures and re-wraps them with its own "Lithicore" brand plastic wrapper.

29. While Plaintiff was refilling windshield washer fluid in his vehicle, the battery spontaneously exploded and sent flames and chemicals up and down his right thigh.

30. Plaintiff suffered painful mixed second and third degree burns to his right thigh, abdomen, scrotum and multiple fingertips on both hands and received extensive medical treatment.

31. Plaintiff experienced tremendous pain and suffering, permanent scaring and disfigurement, other permanent injuries, emotional distress, mental anguish, and loss of income as a result of the injuries he suffered.

### IV. CAUSES OF ACTION

**First Cause of Action
Products Liability Negligent Design
N.C. Gen. Stat. § 99B-1, *et seq.***

32. Plaintiff incorporates by reference all allegations in the Complaint as though fully set forth herein.

33. Plaintiff is a "claimant" as the term is defined by N.C. Gen. Stat. § 99B-1(1).

34. Defendants design and/or manufacture vaping devices, including the subject device, and therefore are "manufacturers" as the term is defined by N.C. Gen. Stat. § 99B-1(2).

35. On information and belief, Defendants design vaping devices, including the subject device, and therefore are "manufacturers" as the term is defined by N.C. Gen. Stat. § 99B-1(2). At the time Defendants designed and/or manufactured the subject device, the subject device was defective in that it was designed to require removeable CLCs.

36. As described herein, CLCs are not intended to be handled by ordinary consumers, and even ordinary handling can cause tiny tears in the plastic wrapper that surrounds the CLC, leading to a short circuit and a violent explosion and fire.

37. Furthermore, designing the subject device to require removeable CLCs as a component of the device, it is foreseeable that consumers will carry those CLCs on their person, and therefore, may be severely injured when the CLC explodes and catches fire.

38. Plaintiff put the subject device to its ordinary use.

39. On April 5, 2023, as was foreseeable to Defendants, Plaintiff was carrying a CLC in his right front pants pocket for use in the subject vaping device designed, manufactured, and sold by Defendants.

40. The CLC spontaneously exploded and caught fire causing Plaintiff severe injuries.

41. Defendants defectively and/or unreasonably designed the subject device to require removeable CLCs.

42. The defective condition of the subject device did not constitute an inherent characteristic of vaping devices and could have been eliminated without substantially compromising the product's usefulness or desirability.

43. At the time the subject device left its control, Defendants unreasonably failed to adopt safer, practical, feasible, and otherwise reasonable alternative designs in the manufacture of its vaping device that could have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness and desirability of vaping devices generally and/or the subject device specifically.

44. Plaintiff used the subject device as it was intended to be used with the required individual CLC. The CLC required for the vaping device spontaneously exploded in Plaintiff's pocket and caused him significant bodily injuries, mental anguish, and other damages.

45. Plaintiff's injuries and damages were a direct and proximate result of Defendants' defective design of the subject device.

## Second Cause of Action
## Inadequate Warning or Instruction
## N.C. Gen. Stat. § 99B-1, *et seq*.

46. Plaintiff incorporates by reference all allegations in the Complaint as though fully set forth herein.

47. Plaintiff is a "claimant" as the term is defined by N.C. Gen. Stat. § 99B-1(1).

48. On information and belief, Defendants design vaping devices, including the subject device, and therefore are "manufacturers" as the term is defined by N.C. Gen. Stat. § 99B-1(2)

49. Defendants knew or had reason to know the dangerous propensities of CLCs and that CLCs are inappropriate for use as removeable and rechargeable batteries in vaping devices, including the subject device.

50. Defendants knew or should have known that Plaintiff would not be aware of the dangerous propensities of CLCs and the hazards associated with the use of CLCs in vaping devices.

51. Defendants failed to warn Plaintiff that due to the risk of spontaneous fire and explosion, removeable, rechargeable CLCs were inappropriate and unsuitable for use in the subject device.

52. Defendants failed to warn Plaintiff that due to the risk of spontaneous fire and explosion, ordinary consumers should not handle individual CLCs.

53. Defendants failed to warn Plaintiff of the dangers associated with normal wear and tear on the battery wrapper.

54. Defendants failed to warn Plaintiff of the risks and dangers of exploding CLCs or provide him with any instructions to mitigate the risk, including warnings or instructions that neither the subject device nor any batteries for the subject device should be carried or stored near his body or recommendations for safer alternatives.

55. Defendants' failure to provide Plaintiff with adequate warnings or instructions created an unreasonably dangerous condition that Defendants knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to Plaintiff.

56. Plaintiff suffered significant bodily injuries and anguish when the CLC spontaneously exploded in his pocket.

57. Plaintiff's injuries and damages were a proximate result of Defendants' failure to warn Plaintiff that CLCs were inappropriate and unsuitable for use in the subject device or the risks and dangers associated with exploding CLCs.

### Third Cause of Action
### Negligence

58. Plaintiff incorporates by reference all allegations in the Complaint as though fully set forth herein.

59. Defendants owed Plaintiff a duty to use reasonable care throughout the design, manufacturing, and/or sale of the subject device, including ensuring that the subject was free of any potentially dangerous design defects.

60. Defendants also had a duty to adequately warn consumers, including Plaintiff that CLCs are inappropriate for use as removeable and rechargeable batteries in vaping devices, including the subject device, and of the risks and dangers associated with using as removeable and rechargeable batteries in vaping devices, including the subject device.

61. Defendants' conduct breached its duty to Plaintiff. Defendants were negligent, careless, and reckless in the design, manufacture and/or sale of the subject device in at least the following ways:

    a. Defendants defectively and/or unreasonably designed the subject device to require removeable CLCs;

    b. The defective condition of the subject device did not constitute an inherent characteristic of vaping devices and could have been eliminated without substantially compromising the product's usefulness or desirability;

    c. At the time the subject device left its control, Defendants unreasonably failed to adopt safer, practical, feasible, and otherwise reasonable alternative designs in the manufacture of its vaping device that could have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness and desirability of vaping devices generally and/or the subject device specifically;

    d. Defendants failed to warn Plaintiff that due to the risk of spontaneous fire and explosion, removeable, rechargeable CLCs were inappropriate and unsuitable for use in the subject device;

    e. Defendants failed to warn Plaintiff that due to the risk of spontaneous fire and explosion, ordinary consumers should not handle individual CLCs.

    f. Defendants failed to warn Plaintiff of the dangers associated with normal wear and tear on the battery wrapper;

    g. Defendants failed to warn Plaintiff of the risks and dangers of exploding CLCs or provide him with any instructions to mitigate the risk, including

12

warnings or instructions that neither the subject device nor any batteries for the subject device should be carried or stored near his body or recommendations for safer alternatives;

h.  Other acts and omissions that will be revealed during discovery.

62. As the actual and proximate result of Defendants' conduct, Plaintiff suffered significant bodily injuries, mental anguish, and other damages.

### Fourth Cause of Action
### Breach of Implied Warranty of Merchantability
### N.C. Gen. Stat. § 25-2-314

63. Plaintiff incorporates by reference all allegations in the Complaint as though fully set forth herein.

64. Defendants are sellers and merchants with respect to vaping devices, including the subject device.

65. The subject device was a good subject to the implied warranty of merchantability. Plaintiff was a buyer of the subject device.

66. At the time Plaintiff purchased the subject device, it did not comply with the implied warranty of merchantability because it was defective and not fit for the ordinary purpose for which vaping devices are used.

67. Plaintiff put the subject device to its ordinary use.

68. The defective design of the subject device was present at the time it left Defendants' control.

69. The defective nature of the subject device was the direct and proximate cause of Plaintiff's injuries and damages.

### JURY TRIAL

70. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays unto the court as follows:

1. That Plaintiff have and recover judgment against Defendants in an amount in excess of $75,000 for all damages;

2. Punitive damages in an amount to be determined by a jury because the conduct alleged above was willful and wanton. Defendant intentionally designed its device to require CLCs despite knowing that these batteries were not intended for use outside battery packs and, in fact, are highly dangerous when used outside battery packs. By failing to disclose these known risks, Defendant acted fraudulently.

3. That costs of this action be taxed against Defendants;

4. That Plaintiff receive prejudgment interest from Defendants as of the date of filing of the Original Complaint; and

5. For such other and further relief as the court deems just and proper.

This the 27th day of March 2025.

Respectfully Submitted,

**PAYNTER LAW FIRM PLLC**

/s/ Sara C. Willingham
Sara C. Willingham
North Carolina State Bar No. 45661
118 St Mary's St., Ste. 100
Raleigh, NC 27605
Telephone: (919) 245-3116
Facsimile: (866) 734-0622
Email: swillingham@paynterlaw.com

*Attorney for Plaintiff*